**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ENERGY WEST MINING
COMPANY,

     Petitioner,

v.

SANDRA SCHILPP, o/b/o Joann H.
Lyle, deceased widow, o/b/o
Estate of James E. Lyle;
DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

     Respondents.

No. 24-9548

_____

**PETITION FOR REVIEW FROM AN ORDER OF**
**THE DIRECTOR, OFFICE OF WORKERS' COMPENSATION**
**PROGRAMS, UNITED STATES DEPARTMENT OF LABOR**
_____

William S. Mattingly, Jackson Kelly PLLC, Lexington, Kentucky, for
Petitioner.

Brad A. Austin, Wolfe Williams & Austin, Norton, Virginia, for
Respondents.
_____

Before **TYMKOVICH**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This appeal involves coal mining. Such mining has long been tied to respiratory and pulmonary diseases called *pneumoconiosis*. *E.g.*, *U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 717 (1990). These diseases led Congress to create a statutory remedy for coal miners who develop pneumoconiosis from exposure to coal dust. 30 U.S.C. § 901(a).

Sometimes, however, coal miners encounter difficulty in pinpointing the cause of respiratory and pulmonary diseases. So the Department of Labor has recognized two forms of pneumoconiosis: clinical and legal. 20 C.F.R. § 718.201(a); *see Consolidation Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 864 F.3d 1142, 1147 (10th Cir. 2017). In its clinical form, pneumoconiosis bears a specific medical diagnosis. 20 C.F.R. § 718.201(a)(1); *see Andersen v. Dir., Off. of Workers' Comp. Programs*, 455 F.3d 1102, 1106 (10th Cir. 2006). In its legal form, however, *pneumoconiosis* includes any chronic lung disease or impairment arising out of work in a coal mine. 20 C.F.R. § 718.201(a)(2); *see Antelope Coal Co./Rio Tinto Energy Am. v. Goodin*, 743 F.3d 1331, 1335 (10th Cir. 2014).

Given the occasional difficulty in pinpointing the cause of respiratory and pulmonary diseases, we presume pneumoconiosis from a disability to a coal miner who has worked in an underground coal mine for at least fifteen years. 20 C.F.R. § 718.305(b)–(c); *see Antelope Coal Co.*,

743 F.3d at 1335. But the presumption is subject to rebuttal. 20 C.F.R. § 718.305(d); *see Antelope Coal Co.*, 743 F.3d at 1336.

The form of that rebuttal underlies this appeal. Sometimes an employer might rebut the presumption by tying the disease to something unrelated to coal dust. But what if the employer tries to rebut *legal pneumoconiosis* based on a medical opinion involving the *clinical* form of the disease? Can the agency reject that opinion based on a blurring of distinctions between clinical and legal pneumoconiosis? We answer *yes*.

1.    **The agency twice awards benefits.**

This is the second appeal of administrative decisions granting statutory benefits for pneumoconiosis.

In the first decision, the administrative law judge awarded benefits based on the rebuttable presumption and a report by Dr. Shane Gagon; and the Benefits Review Board affirmed. Energy West petitioned for judicial review, arguing in part that the administrative law judge had failed to consider a contrary opinion by Dr. Joseph Tomashefski, Jr. We agreed with Energy West, pointing out that Dr. Tomashefski had explained in his deposition that exposure to coal dust did not cause abnormalities in the lung tissue. *Energy W. Mining Co. v. Lyle*, 929 F.3d 1202, 1213–14 (10th Cir. 2019). So we remanded for the agency to consider the explanation that Dr. Tomashefski had given in his deposition. *Id.*

An administrative law judge reconsidered Dr. Tomashefski's explanation and again granted benefits, and the Board affirmed. Energy West again petitioned for judicial review, arguing that the Board had failed

- to follow our instructions on remand,

- to adequately explain why it rejected Dr. Tomashefski's explanation, and

- to base the award on substantial evidence.

**2.    The agency rejects a medical opinion on legal pneumoconiosis.**

To obtain benefits under the Black Lung Benefits Act,[1] a miner must establish four elements:

1.    Disease: The miner must suffer from pneumoconiosis.

2.    Disease causation: The pneumoconiosis must arise out of employment in a coal mine.

3.    Disability: The miner must have a total disability because of a respiratory or pulmonary impairment.

4.    Disability causation: The pneumoconiosis must bear a substantial contribution toward the miner's total disability.

*Energy W. Mining Co. v. Est. of Blackburn*, 857 F.3d 817, 821 (10th Cir. 2017).

For the first element, the pertinent regulations recognize two forms of pneumoconiosis: clinical and legal. *See* p. 2, above. "'Clinical

---

[1]    The miner and his wife have died. The respondent, Ms. Sandra Schilpp, pursues the claim on behalf of the miner's estate and his wife.

pneumoconiosis' consists of those diseases recognized by the medical community as pneumoconiosis, *i.e.*, the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). *Legal pneumoconiosis* describes a "much broader" category of diseases, *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 210 (4th Cir. 2000), encompassing "any chronic lung disease or its impairment and its sequelae arising out of coal mine employment," 20 C.F.R. § 718.201(a)(2). So *legal pneumoconiosis* may exist even without a diagnosis of clinical pneumoconiosis. *See Antelope Coal Co./Rio Tinto Energy Am. v. Goodin*, 743 F.3d 1331, 1349 (10th Cir. 2014).

For miners who have worked in coal mines for at least fifteen years and incurred total disabilities from respiratory or pulmonary impairments, we presume satisfaction of the elements of disease, disease causation, and disability causation. *See Energy W. Mining Co. v. Lyle*, 929 F.3d 1202, 1207 (10th Cir. 2019). The burden then shifts to the employers to rebut these elements. 20 C.F.R. § 718.305; *see Energy W. Mining Co. v. Est. of Blackburn*, 857 F.3d 817, 822 (10th Cir. 2017).

Here the administrative law judge found that the miner had worked in a coal mine for 28 years and had suffered from a totally disabling

5

respiratory or pulmonary impairment. With these findings, the judge presumed disease, disease causation, and disability causation.

On remand, the administrative law judge applied these presumptions and found them unrebutted. For this finding, the judge noted that Dr. Tomashefski had testified in his deposition that the miner didn't have legal pneumoconiosis. But the judge rejected this testimony for three reasons:

1.   Dr. Tomashefski had not cited medical literature.

2.   He hadn't persuasively explained why he completely eliminated coal dust as a cause of the impairment.

3.   Dr. Tomashefski had conflated the legal and clinical forms of pneumoconiosis.

With these rationales, the judge concluded that the miner's family was entitled to benefits. The Board upheld this decision, relying on the third reason and skirting the first two reasons.

"Once the Board makes a merits determination, the [Black Lung Benefits Act] allows for only 'limited' judicial review to determine 'whether substantial evidence supports the factual findings of the [administrative law judge] and whether the legal conclusions of the [Board] and the [administrative law judge] are rational and consistent with applicable law.'" *Spring Creek Coal Co. v. McLean*, 881 F.3d 1211, 1217

(10th Cir 2018) (quoting *Westmoreland Coal Co. v. Stallard*, 876 F.3d 663, 668 (4th Cir. 2017)).[2]

### 3.    The Board has complied with our remand order.

In this appeal, Energy West argues that

- the Board didn't follow our instructions on remand when declining to give any weight to Dr. Tomashefski's opinion and

- the prior remand suggests that the Court regarded Dr. Tomashefski's opinion as consistent with the regulations.

We reject these arguments. In the prior opinion, we explained that "the Board ha[d] discretion to remand to an administrative law judge to consider Dr. Tomashefski's opinion." *Energy W. Mining Co. v. Lyle*, 929 F.3d 1202, 1214 n.17 (10th Cir. 2019). In that explanation, we said nothing to suggest a view about the impact of the regulations on Dr. Tomashefski's conclusion. The remand thus allowed the administrative law judge to

---

[2]    The parties didn't brief whether we consider the Board's rationale for rejecting Dr. Tomashefski's testimony or the administrative law judge's. Both the Board and the administrative law judge relied on Dr. Tomashefski's conflation of clinical and legal pneumoconiosis. *See* p. 6, above. But the administrative law judge also gave two more reasons to reject Dr. Tomashefski's opinion. *See id.*, above. In oral argument, Energy West said that we should consider the Board's rationale "and/or" the administrative law judge's; the claimant's attorney urged us to consider both rationales.

As discussed below, we conclude that the Board didn't err in upholding the administrative law judge's third rationale. *See* Part 4, below. So we need not consider the administrative law judge's two other reasons for questioning Dr. Tomashefski's opinion.

reassess Dr. Tomashefski's explanation. *See Energy W. Mining Co. v. Lyle*, 929 F.3d 1202, 1214 n.17 (10th Cir. 2019).

**4.    The agency has adequately explained and supported its rejection of Dr. Tomashefski's testimony.**

Energy West also argues that the agency didn't adequately explain why it was rejecting Dr. Tomashefski's testimony. This argument involves a legal issue that we review de novo. *See Gunderson v. U.S. Dep't of Lab.*, 601 F.3d 1013, 1021 (10th Cir. 2010). For this review, we must determine whether the agency supported its reason for rejecting Dr. Tomashefski's opinion. *See Energy W. Mining Co. v. Est. of Blackburn*, 857 F.3d 817, 823 (10th Cir. 2017) (stating that when the medical evidence conflicts, an administrative law judge must articulate a reason and provide support to favor one opinion over another). We base this determination on the deposition testimony from Dr. Tomashefski and the regulations defining clinical and legal pneumoconiosis.

**a.    Deposition testimony**

In Dr. Tomashefski's deposition, Energy West's counsel referred to the regulatory definition of *legal pneumoconiosis* and asked whether the miner had this disease; and Dr. Tomashefski answered *no* based on what he had not seen in the lung tissue:

> Q.    The Department of Labor has also recognized pneumoconiosis may be any chronic lung disease that's substantially related to or significantly aggravated by

> exposure to coal mine dust during coal mine employment.
> Are you aware of that definition?
>
> A.    Yes, I am.
>
> Q.    Is there anything *that you saw in this lung tissue* that would
> meet the definition of legal pneumoconiosis?
>
> A.    No, I did not.

Joint App'x at 147–48, *Energy W. Mining Co. v. Lyle*, No. 18-9537 (10th Cir. filed Oct. 26, 2018) (emphasis added). Dr. Tomashefski explained that the lung tissue had "no evidence of dust deposition in the airways" or significant deposition of pigment and mineral particles. *Id.* at 151.

This explanation accounts for Dr. Tomashefski's inability to diagnose *clinical pneumoconiosis* based in part on the absence of particulates in the lung tissue. *See* 20 C.F.R. § 718.201(a)(1) (defining clinical pneumoconiosis as "the conditions characterized by permanent deposition *of substantial amounts of particulate matter in the lungs* and *the fibrotic reaction of the lung tissue to that deposition* caused by dust exposure in coal mine employment" (emphasis added)).

But legal pneumoconiosis is much broader. *See* p. 5, above. A miner's "chronic lung disease or impairment" might constitute *legal pneumoconiosis* even without "permanent deposition of substantial amounts of particulate matter in the lungs." 20 C.F.R. § 718.201(a); *see* p. 5, above. So an administrative law judge may find

9

- legal pneumoconiosis even when there are no particulates in the lung tissue, *see Extra Energy, Inc. v. Lawson*, 140 F.4th 138, 144 (4th Cir. 2025), and

- confusion between the clinical and legal forms of pneumoconiosis when a physician rejects legal pneumoconiosis based on the absence of particulates in the lung tissue, *see Westmoreland Coal Co. v. Cochran*, 718 F.3d 319, 324 (4th Cir. 2013) (concluding that an administrative law judge provided a sufficient rationale to find legal pneumoconiosis because the experts had "primarily concentrated on explaining why they believed the miner did not suffer from clinical pneumoconiosis"); *Cent. Ohio Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 762 F.3d 483, 492 (6th Cir. 2014) (concluding that the administrative law judge didn't err by rejecting a physician's opinion on the ground that it had conflated clinical and legal pneumoconiosis).

From the deposition testimony and the regulations, we thus conclude that the Board adequately explained why it rejected the explanation that Dr. Tomashefski had given in his deposition.[3]

### b. Report

In a prior report, Dr. Tomashefski expanded his analysis beyond an evaluation of lung tissue. For example, the report discussed the miner's self-description, pulmonary function test results, arterial blood gas studies, use of supplemental oxygen, and "significant co-morbid conditions of obesity, coronary artery disease, arthritis and [gastroesophageal reflux

---

[3]    The Third Circuit also upheld an administrative law judge's assignment of limited probative weight to a virtually identical opinion by Dr. Tomashefski, where he had relied on the absence of pigmentation, macules, and micronodules. *Consolidation Coal Co. v. Dir. Off. of Workers Comp. Programs*, 741 F. App'x 69, 78–79 (3d Cir. 2018) (unpublished).

disease].” Joint App'x at 100, *Energy W. Mining Co. v. Lyle*, No. 18-9537 (10th Cir. filed Oct. 26, 2018). Based on that discussion, Dr. Tomashefski opined that the miner's disability had resulted from multiple conditions unrelated to “coal mine employment, coal dust exposure or coalworkers' pneumoconiosis.” *Id.*

This opinion could be viewed as addressing *legal pneumoconiosis*. But the first administrative law judge found that this opinion had “minimal probative value” because it was not well-reasoned or well-documented and was based on inaccurate reports. *Id.* at 292–93.

In the prior panel decision, we remanded for the Board to consider Dr. Tomashefski's deposition testimony about the cause of legal pneumoconiosis. *Energy W. Mining Co. v. Lyle*, 929 F.3d 1202, 1214 (10th Cir. 2019). In remanding, we didn't question the first administrative law judge's analysis of Dr. Tomashefski's report; to the contrary, we focused on his deposition testimony. *Id.* So the remand contemplated reconsideration of Dr. Tomashefski's deposition testimony rather than his report.

**5.      The award of benefits is supported by substantial evidence.**

Energy West also contends that the agency lacked substantial evidence to support an award of benefits. We reject this contention.

Evidence is *substantial* if a reasonable person might view it “as adequate to support a conclusion.” *See Energy W. Mining Co. v. Lyle*, 929

11

F.3d 1202, 1207 (10th Cir. 2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). When applying this test, we do not reweigh the evidence. *Id.*

As noted above, we presume that the miner's diseases arose out of his employment in a coal mine. *See* pp. 4–5, above. In addition, Dr. Gagon opined that the miner's "coal dust exposure" had contributed to his chronic bronchitis, questionable nodule,[4] and coronary artery disease. Joint App'x at 12, *Energy W. Mining Co. v. Lyle*, No. 18-9537 (10th Cir. filed Oct. 26, 2018). An administrative law judge found this opinion "well-reasoned" and "well-documented." *Id.* at 301.

In an earlier appeal, we upheld the administrative law judge's reliance on Dr. Gagon's opinion. *Energy W. Mining Co. v. Lyle*, 929 F.3d 1202, 1208–10 (10th Cir. 2019). And in our appeal, Energy West doesn't challenge the administrative law judge's reliance on Dr. Gagon's opinion.

Given the combination of Dr. Gagon's opinion and the presumptions of disease causation and disability causation, we conclude that the administrative law judge had substantial evidence to find satisfaction of the elements for an award of benefits.

---

[4]     Dr. Gagon's report noted a "? nodule [left] lung." Joint App'x at 12, *Energy W. Mining Co. v. Lyle*, No. 18-9537 (10th Cir. filed Oct. 26, 2018).

12

**6.      Conclusion**

The Benefits Review Board adequately explained and supported its reason to reject Dr. Tomashefski's opinion on legal pneumoconiosis. He relied on the absence of coal particulates in the lung tissue, and the Board could reasonably view this explanation as a conflation of clinical and legal pneumoconiosis.

Granted, the absence of coal particulates might prevent a diagnosis of clinical pneumoconiosis. But the Board could reasonably view the absence of particulates as irrelevant to the issue of legal pneumoconiosis. So the Board didn't err in explaining why it upheld the rejection of Dr. Tomashefski's opinion. And the evidence is sufficient for an award based on Dr. Gagon's opinion and the presumptions of disease causation and disability causation.

Petition denied.